The next case on the call is 5-16-0214, McDaniel v. Stevens. Counselor, are you ready to proceed? You may proceed. This matter is pretty straightforward as far as the facts are concerned, I believe. As noted in the court's opinion on page 83 of the brief and of C-357 of the record, the court says neither plaintiff nor any witness actually observed plaintiff's fall on or near the stake. Nothing could be further from the truth. We have three witnesses that can pinpoint the stake in the vicinity of the plaintiff when the plaintiff fell. First of all, Mr. McGarry said yes when asked by opposing counsel if he saw a stake, and Mr. McGarry said yes, it's right there near where the plaintiff fell. Mr. Delmore testified in his deposition that he saw... I'll go back. Also, Mr. McGarry testified that he tried to catch the plaintiff when he fell, so he knows pretty much where the plaintiff was when he fell. Mr. Delmore testified that after he saw the plaintiff fall and get up and leave, he immediately walked over to the location, looked down, and there was a stake. The plaintiff said he didn't know what happened to him. When the plaintiff fell, he thought it was a blood clot. He got in his car. He was so embarrassed, he left, went to the doctor. The doctor said, no, it's not a blood clot. He couldn't figure out why he fell, but he came back a few days later, looked down, there's a stake. At a minimum, this is circumstantial evidence that the stake caused the fall, and I propose that it's actually direct evidence because Mr. Delmore said, yes, I looked over there, and there's a stake right where he fell. So to me, it's open and shut case that the court was completely wrong on its order of summary judgment, and this case should be remanded back to the circuit court. So you're arguing there's a question of fact. You're disarguing there's a question of fact. Yes. Thank you, counsel. May it please the court. Dan Lyle for Appellee Ronald Sears. I do think that there are some distinctions we need to make about the facts. I think it's very clear this is a circumstantial evidence case. Plaintiff so much has admitted that, and the appellate admitted that in their briefs. This is the first I've heard of direct evidence,  It purely is a circumstantial case. When you look at the case law, the authority on this issue, it's very clear that we do not have a sufficient basis for plaintiff to prove causal connection. First, there is no dispute that the plaintiff fell on the property. We're not going to dispute that. We're further not going to dispute that there was, by several accounts, an object on the property that was found sometime after the fall. What we don't have is any actual evidence of the specific events of the fall, the mechanism of the fall, how Mr. McDaniel's body interacted with the property in any way, or any testimony from any witness of how he interacted with the property at the time of the fall. Mr. McDaniel said specifically, I could not, on the day of the accident, I could not identify any reason for my fall. And I asked him, could you identify a defect on the property or a condition on the property as a reason for your fall? He said, I could not. His best guess at that time was, I must have stepped wrong and I thought I had a blood clot that occurred. He specifically said, I only remember falling. He got in his car and he left. He didn't. Sir, you going to ask a question? Yes, sir. Is there any precedent that says that the plaintiff must have known at the immediate time of the fall what caused his fall? In any case, it says that's absolutely necessary. I don't think it's necessary. And I know that Appellant made a pretty large distinction on that issue. I don't think that's the issue that I'm trying to raise is it's not the timing of what may make this understanding. It's the, you know, do they have sufficient independent knowledge to make a statement that someone can rely upon? You know, in this case, you know, it's that Mr. McDaniel had no information at the time. And then he comes back to the property. And I asked him, well, it seems like, sir, now at the time of the deposition, you have an opinion as to what may have caused the fall. He said, yes, I do. I believe now that I must have caught my right foot on this piece of metal, and that must have been what caused me to trip. So, and I asked him, sir, do you have any additional basis for your opinion other than the fact that you fell and that you went back several weeks later and found this piece of metal? He said, if I understand your question correctly, I do not. So it's not the timing of it. It's that he still, regardless of the timing, has no basis by which we can rely on anything more than the fact of a fall and the presence of an eye. And the distinction in all the cases that Helen and myself have raised in our briefs is, you know, there needs to be a clearly identified defect for there to be circumstantial evidence. And the standard for circumstantial evidence cases established by Wieman as a Second District case, I think, has probably been underfeuded by any other case since its ruling states, fact cannot be established by circumstantial evidence unless the circumstances of such are of such a nature and so related to each other that it is the only possible and not merely possible conclusion that can be drawn therefrom. That's what we're dealing with here, is that in every case that was cited by a plaintiff in his brief in support, where a suffering judgment had been overturned or there was a question of fact that had been determined, there was always a clearly identifiable testimony or evidence. At the time of these, at the hands of ruling, the plaintiff testified, I fell. At the time of my fall, the sidewalk shifted below me, and it caused me to lose my balance and fall. In the Belle Reve case, the plaintiff specifically testified, I felt at the time I stepped that the surface was not level, and that caused me to fall. In the Wieman case, we have information about the mechanism of the fall. It was not a stumble or a trip. There was water there. There was extra testimony, and there was testimony that the characteristics of her fall were indicative of slip. In the Ramke case furthermore, there was evidence of a hazard path. There was a red mark on the foot. There was testimony. There was no other potential cause by witnesses in the path on a smooth, plain surface, and there was extra testimony. All we have in this case is Mr. McDaniel's blanket testimony, I fell, I came back, and there was a hazard. We also have other witnesses' testimony that regards, I mean, that's why he went back, was because somebody else suggested there was something there. Actually, no, we do not. No. I asked Mr. Delmore, is he the only actual witness who made any testimony about the piece of metal as it relates to the location of plaintiff's fall or his fall? And I think that's a good distinction there because there was some testimony that was cited in Appellant's brief, and it was of Mr. Delmore, that immediately after the fall, he walked over and noticed this piece of metal. But I asked Mr. Delmore, I said, at the time of the fall, did you know why he fell? He said, no, I did not. Then afterwards, we walked around and we wondered what might have happened, and then we saw this piece of metal. And I asked him, I said, because we didn't know why he fell or anything. Then we walked over that way and there was this piece of metal. And I followed up and I said, sir, okay, all right, you and Linda were there on the side. You saw Mr. Daniel walk forward. You saw him fall. When he fell, you didn't know why he fell. Is that a fair statement? Exactly. So all he saw was a fall, and then later he walks over and he sees a piece of metal. This is the exact situation we have in the seven to eight cases I cited in my brief, is the existence of a fall and a hazard. Now, the case of Kimbrough, which is one of the several cases of a causal connection case, states that it is not a defense or a strike where a defendant has not made that causal connection. The defendant does not have a burden then to show that a defect was not present, which just reinforces the statement that his plaintiff's burden to prove a causal connection was some form of evidence beyond just a fall and the existence of a hazard. Counsel, how are the facts in this case different from Radke? Well, I think that's a good distinction, Jerry, because in Radke, the plaintiff did not understand why she fell and she didn't see it. But there were two women's sisters who saw this jack handle hanging over her path immediately after the fall, and they said those people had tripped on those before. Two witnesses said they observed the entire path. There was clear planks. There was no other cracks, steps, anything. They said there was no other potential reason for her to fall other than the jack handle, which we saw across her path and for which we'd known it was a prior act. Number four, and I think very compelling, is immediately after the fall, there was a red mark across the plaintiff's foot, and the court said this is indicative of her striking the jack handle, supported by the other circumstantial evidence we have. And there was also extra testimony in that case that discussed the mechanism of her fall, how they observed her body move, and what effect it would have had as a witness or tributant. This case, all we have is Mr. Daniels says he fell, and when I asked him all those same questions. How did you fall? What foot were you stepping with? How did your body interact with the ground? You know, how did that interaction with the ground, you know, cause your body to move? He said, I only remember falling. He could not provide specifics in terms of how his body was moving, right foot, left foot, and neither did any of the witnesses. They just said, we observed the fall. Mr. Magino comes back, and after he sees the piece of metal, he says, well, I would have struck it with my right foot. He had so much specificity that he had no basis to provide. So he makes a great leap that is very different from what we had in Rappaport. It was five separate things, circumstantial, that I think the court relied on within that holding of it was the only probable conclusion, not merely a possible conclusion. What we have here is a possible conclusion. There are several other cases that are very similar. One was a monarchy case. That was a second district case. So I had to after hands were on with some of the other ones. And in that case, the court relied on Kesselman's motorcycle that had hit a bank, and they made the exact same distinction because the plaintiff said, there must have been a defect, otherwise I would have lost control of my motorcycle. The last one would have been, and I'm going to pronounce it incorrectly, the cruel and modest. It was a roller rink case. Plaintiff claims she fell on a hump in the car, and it was an identified hump, and she could not provide any more specifics of how she interacted with it. Her statement was, there must have been a defect, I must have interacted with it, otherwise I would not have fallen. And these cases go through the exact same analysis, and they come to the same conclusion. We cannot, unless we have a clear and probable connection between this hazard and the fall, make this leak, otherwise it's pure speculation and conjecture. But in regard to the roller skating case, I mean, they determined that they never did find the defect. The carpet wasn't buckled like she had suggested. Whereas here, we know of a defect. They found them abroad. Well, but I think there's also something else that we really need to clarify, and I don't 100% recall you may be correct. I know. But I just, and even if you are, I don't think the analysis changes, because it's the lack of knowledge of the interaction with the defect, whether it was there or not. But if I might, Judge, I think this might help clarify where I'm trying to go. Mr. McDaniel was exceptionally clear that he fell in the grassy area. When I asked Mr. Delamore, and that there was a, I'm sorry, he was very clear that the piece of metal was in the grass. I apologize. When I asked Mr. Delamore twice his deposition, where did Mr. McDaniel fall, he said he fell in the gravel area of the parking area prior to the time he gets to the grass. So even one of the witnesses, upon which plaintiff or appellate relies upon, to establish this causal connection of even a close vicinity between a fall and a defect, has clearly provided another question that gives us a difference in location. And I think that's one that we can reduce in credibility of Mr. Delamore's testimony, despite the fact that he still has no information of how a fall occurred. Effectively, absent the information that we would require to make this determination, what plaintiff is asking is, any time there is a fall on a person's property, and any time there is any defect there, we effectively have strict liability or arrest of the situation. And that's what the standard is trying to get us away from. We cannot make that leap between simply a fall and a hazard, even if it is there, because the plaintiff has the ability to prove this causal connection. But the plaintiff has, at some point during your deposition, said that he fell and he felt that it was because of the metal rod. I mean, at the time of the fall, he didn't know why. I mean, but afterwards, he's come to the conclusion, after he went back and examined the area, that there was a metal rod, and that's what caused him to trip. So he's made that affirmative statement. But the affirmative statement is based on what, Judge? And that's the distinction I think is important in this case. I asked him, at his deposition, at the time of the fall, when he can give us these specifics, how did your body interact? He said, I don't know. I cannot tell you. I can't tell you which foot I was sitting on. I can't tell you did I trip, did I stumble, did I fall, did I roll over, did my knee give out, did I have a blood clot? He could provide no specifics. And he didn't say, I don't remember. He said, I don't have any information to provide to you. And at that time, I didn't have that information. Then, and I asked him at that time, do you have an opinion, at the time you were at the premises the first time, that your fall was in any way caused or contributed to be caused by this metal rod or any defect or condition of the property? He said, no, I could not. Then he goes to his doctor to see if he had a blood clot. The doctor says no. And on his own, without discussions from Mr. Dunmore, that was very clear in his deposition testimony, he goes back to the premises, walks around, sees this piece of metal, and said, that must have been what caused the fall. That's the analysis of Kugelhorn Bodice case. It's the lack of any information or any way to identify this defect or relate it to his fall. Well, I think the distinction, though, between that and, I'll let you say the word again, Kugelhorn Bodice, is essentially that she didn't know why she fell and assumed that there was a pothole in the carpeting. Went back and looked, and there was not a pothole. They couldn't find a defect. Whereas in this case, he did know why he fell. He went back to look, and he found a defect. He found a defect that he claims was the cause of his fall. So I think the two cases are Kugelhorn Bodice. Mr. Dunmore, I have a question. When I asked him, what were the bases for your opinion that this caused your fall, was it anything besides just his presence? He said no. In his opinion, providing more specifics about his interaction, came without any bases. He said that must have been the reason. And I don't want to just rely on the Kugelhorn Bodice case because there are countless other cases that I cited in my brief where there was an identifiable hazard on the premises, and there was a hazard and a fall, and the court still said there was not enough. In the Vance case, there was a hazard in the area, an identified hazard in the area. No evidence of how he interacted with the hazard, and the court found it was a direct-of-birth case. The Kimbrough v. Jewel case, there were three spots on this ramp in the area where plaintiff fell, identified afterwards. No evidence or information about how they interacted with the hazard. That was a sober judgment case. The Monahan case was a claim that there were no necessary defects, but there was a curb of disembankment that was claimed to be related. So there is an aspect that could have identified something that could have been involved, but no evidence of interaction with it. Again, a sober judgment case. The Barber case, there was alarm in the protosexual, but again, no information of interaction. And then there was another case where the plaintiff's testimony effectively was, I assumed it was wet, otherwise I would not have fallen. Now, all these cases you're citing are appellate court cases. Correct. Yes, sir. Do you have a Supreme Court case on any of these? I don't believe either party has found a Supreme Court case. I would have to cite a Supreme Court case to answer this question. And then the other one, and this is a JRB case, the Bradford v. Woolworth case, there was a depression in the rugs, an identified depression in the rugs. In fact, in that case, the plaintiff was found laying on top of the two rugs when an employee came. So not only do we have a defect, we've got a plaintiff in the area of the defect, but she could not relate the defect to her fall with any specifics, mechanism, how she interacted with it, et cetera. And the court in that case said the inference is too ambiguous to predicate through causal connection. So there are additional cases where we do have a defect in the area, but no information to support it, and that's effectively what we have here, is that despite the witnesses and the testimony of the plaintiff, we just don't have information by which a jury could make that connection that was based upon any of your establishments. Thank you. Rebond? Mr. Churchard, if I can just have you start with one question. I know that one of the exhibits in this case, and I'm not sure if you filed it, but to be honest with you, I'll clap my head. There's a picture of the metal stake. There were two pictures of the metal stake next to someone's foot standing there. Correct. Is there any dispute as to where the metal stake was located? I mean, it was in the grass, not in the gravel, correct? There's no dispute. The grassy area was immediately adjacent to the gravel part of the drive. So how much space are we talking from as far as where the stake was in relation to the gravel stopped here and the grass went on for another five feet and the stake was there, or was the stake right at the edge of the grass and the gravel? According to the pictures that I recall being identified by the witnesses, the gravel area of the driveway was the type of gravel that gets overgrown with grass and then eventually becomes grass, and so they all pinpointed the stake as being right where the gravel turns into grass. So the picture itself shows grass growing up into the gravel, or grass growing up over the stake and up level with the stake. Now this was the springtime, so the grass was just right there at the top of the stake and not quite easy to see. Mr. Little, I was going to ask you that before you left, but is that your understanding as well? I don't believe there's any testimony as to distances. I think the only thing we have in terms of testimony is in regards to the identification of the pictures by Mr. Dane. Clearly within a grassy area, there's clearly a gravel, and the gravel is kind of, instead of a driveway, the driveway is a gravel, that's what I actually mean. But I don't believe there's been any measurements or distinctions in terms of how close to one of those separations is. How's that a picture? And what happened was, before we could get a hold of the stake, the insurance adjuster for the defendant pulled the stake out and took it. So, any measurements they might have, they would have, you wouldn't have, you wouldn't have. So, the stake has disappeared. I'm not letting you use me. So, the stake is gone. The cases that were cited by counsel all state that there's no identifiable defect, and that's why it ruled against the plaintiff. And now he's saying there was an identifiable defect in each one of those cases. I don't know. You have to read each case, I guess, and point out that it says no identifiable defect. Here we have identifiable defect. And if he wants to go further, some of these cases that rule in favor of the plaintiff is pretty iffy. In the Wigman case, the plaintiff was coming down the stairway. She falls. She's basically knocked unconscious. She has no idea how she fell, except she says she didn't trip. And people come over and find her lying in a pool of water and partial blood. And so, therefore, they say she must have slipped out of water. So, there's an identifiable defect, although you still have to have a jury decide whether there's a causal connection there. But they did create a question of facts as to whether there's a causal connection there. So, that's why we're saying there's a question of facts. And, you know, you have a reasonable inference. You have a stake. You have a fall. You have a person who walks over, sees a stake in the yard right there where he fell. Is that a reasonable inference? He slipped on the stake. And the way he fell, the one man said, I tried to catch him in my arms so he was falling forward. It wasn't like he fell back because he was slipping on a banana peel or whatever. He fell forward. He caught his foot on – or his toe on the – I'm not going to go forward and try to state my opinion, but I'm not an expert. But anyway, that's the – that's what I say it should be. And it's not necessarily that we have only one conclusion that can be drawn from the evidence. That considering case, that's right there in the last paragraph – or second to last paragraph. Any other questions? Thank you. Thank you. In case you've taken under advisement, we'll tell you if you're excused and we'll call the next case. We're going to take a short recess at this time.